FILED

02/25/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 12, 2019

**STATE OF TENNESSEE v. STEVEN KELLY**

**Appeal from the Circuit Court for Montgomery County**
**No. 41400848          William R. Goodman, III, Judge**

_____

**No. M2018-00659-CCA-R3-CD**

_____

Following a bench trial, the Defendant, Steven Kelly, was convicted of possession with intent to sell or deliver 0.5 grams or more of cocaine. By agreement of the parties, the trial court sentenced the Defendant to a suspended nine-year sentence to be served consecutively to a federal sentence. On appeal, the Defendant contends that the evidence failed to prove that he had the intent to sell the cocaine. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and TIMOTHY L. EASTER, JJ., joined.

Gregory D. Smith (on appeal), and Edward E. DeWerff (at trial), Clarksville, Tennessee, for the appellant, Steven Kelly.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and C. Daniel Brollier, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case arises out of a shooting on Dodd Street in Clarksville, Tennessee, on May 24, 2014. While searching a residence for items related to the shooting, an officer found 3.3 grams of crack cocaine. After a police investigation, a Montgomery County

grand jury indicted the Defendant for possession with intent to sell or deliver 0.5 grams or more of cocaine. At trial, the parties presented the following evidence: Clarksville Police Department ("CPD") officer Joshua Katz responded to the report of the shooting and observed bullet holes on the outside of the residence. Based upon his observations, he requested and was granted permission to search the inside of the residence for evidence related to the shooting. During the search, Officer Anderson found illegal drugs in a vase located under one of the bullet holes in the living room.

When CPD Sergeant David Galbreath arrived at the scene, other officers notified him that "there might be some controlled substances or illegal substances in the house." Sergeant Galbreath observed the substance in the vase and noted that it appeared to be crack cocaine. He collected the substance from the vase for field testing and gave it to CPD Officer Lon Chaney, a narcotics investigator. The preliminary weight of the substance was five grams and, based upon Officer Chaney's experience, he believed the substance appeared to be crack cocaine. Officer Chaney opined that five grams is "not a typical amount you would find [associated with] user amount." He stated that the size of the "rocks" also indicated that the crack cocaine was for sale and not personal use. Officer Chaney said that a "typical street level" purchase was .1 to .2 grams. He explained that the size of the rocks seized from the residence on Dodd Street were "almost a gram a piece," which is too large to fit in a crack pipe. Officer Chaney identified photographs of the crack cocaine taken the night it was seized. He noted the shape of the crack cocaine still retained the shape of the dish it was cooked in. The fact that the crack cocaine was still large and in the "cookie" form in which it had been manufactured, indicated to Office Chaney that the person who possessed the crack cocaine intended it for sale and not personal use.

The substance was packaged and submitted to the Tennessee Bureau of Investigation ("TBI") for further analysis. The TBI report, included in the record, indicated that the actual weight of the substance was 3.3 grams. Officer Chaney testified that a "true" "eight ball" was 3.5 grams, but that in Clarksville an eight ball is commonly between 2.7 grams and 3.2 grams. Officer Chaney estimated that this particular eight ball was worth approximately $330 in street value.

The Defendant had not been at the residence at the time of the shooting but arrived shortly after and was "concerned." Officers detained him in the back of a police car, and Officer Chaney spoke with the Defendant about the substance found in the vase. The Defendant was "very adamant," stating repeatedly, "you can go ahead and drug test me; I'm not going to test for that; you can drug test me." The Defendant made no statements regarding possession of the crack cocaine at the scene but later contacted Officer Chaney to arrange a meeting. The Defendant and his attorney met with Officer Chaney at his office where the Defendant admitted ownership of the crack cocaine. He described the

substance as being in "a couple big chunks." He estimated that it "was about a ball." When Officer Chaney asked the Defendant what he intended to do with the crack cocaine, the Defendant responded that it was for personal use. Officer Chaney reminded the Defendant of his prior statements about drug testing, and the Defendant stated that he had been lying. A recording of the interview was introduced into evidence.

Officer Chaney testified that in cases involving persons that possessed crack cocaine for personal use, it was common to find drug instruments used to ingest the cocaine, *i.e.*, soda can, pipe, metal pipe, glass pipe, with the crack cocaine. No drug paraphernalia was found with the crack cocaine. He further noted that the Defendant was not employed at the time of these events.

On cross-examination, Officer Chaney agreed that a larger amount of crack cocaine, purchased "wholesale," would generally be sold for less, *i.e.*, $150. Officer Chaney further agreed that a "thorough search" of the residence was not done because the search was based upon the shooting.

After hearing this evidence, the trial court found the Defendant guilty of possession with intent to sell or deliver 0.5 grams or more of cocaine. The trial court found it significant that no drug paraphernalia was found in the vicinity of the vase. The trial court found the location of the substance and the amount indicative that the substance was not for personal use. The trial court also considered the Defendant's unemployment and his assertions at the scene, "you can test me and won't find that in me." At a subsequent sentencing hearing, the trial court sentenced the Defendant, by agreement of the parties, to serve a suspended nine-year sentence to be served consecutively to a federal sentence. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the evidence at trial was insufficient as to the element of intent to sell. He maintains that the proof showed merely simple possession. The State responds that there was sufficient evidence to support the inference that the Defendant possessed the crack cocaine with the intent to sell it. We agree with the State.

On appeal, a conviction removes the presumption of a defendant's innocence and replaces it with one of guilt, so that the defendant carries the burden of demonstrating to this court why the evidence will not support the findings of the trier of fact. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). Thus, the State is entitled to the strongest legitimate view of the evidence and all

reasonable inferences which may be drawn therefrom. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

In a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *see also State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

It is an offense for a defendant to knowingly possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance. T.C.A. § 39-17-417(a)(4) (2014). A violation of Tennessee Code Annotated section 39-17-417(a)(4) involving 0.5 grams or more of cocaine with the requisite intent is a Class B felony. T.C.A. § 39-17-417(c)(1). "Before a defendant may be convicted of possessing a controlled substance with intent to manufacture, distribute, or sell, the State must prove beyond a reasonable doubt the substance was a controlled substance and the defendant possessed the substance with the intent to manufacture, deliver or sell the substance." *State v. Cooper*, 736 S.W.2d 125, 128 (Tenn. Crim. App. 1987). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substances were possessed with the purpose of selling or otherwise dispensing." *Id.*; *see* T.C.A. § 39-17-419.

The evidence, viewed in the light most favorable to the State, showed that the Defendant admitted ownership of the 3.3 grams of crack cocaine found at the Dodd Street residence. Officer Chaney testified that this amount of cocaine is not associated with personal use. Additionally, the shape of the crack cocaine was still consistent with the form it takes during manufacture before it is broken into smaller pieces at the time of a drug sale. No instrument used to ingest the crack cocaine was found with the substance, and the approximately one gram pieces were too large to use in a crack pipe. The Defendant had no employment at the time of these events and at the scene repeatedly

offered to be drug-tested to show he had not used drugs. Although during a later interview, the Defendant claimed that the drugs were for personal use, the credibility of witnesses and the weight to be given to evidence are resolved by the trier of fact. By its verdict, the trier of fact discredited the Defendant's subsequent claims that the drugs were for personal use. This court does not second-guess the weight, value, or credibility afforded to the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Accordingly, we conclude that there was sufficient evidence upon which a trier of fact could find that the Defendant possessed the 3.3 grams of crack cocaine with the intent to sell.

The Defendant cites to *State v. Belew*, 348 S.W.3d 186 (Tenn. Crim. App. 2005), in support of his contention that the evidence in this case is insufficient. In *Belew*, this court held that a jury cannot infer intent to sell or deliver solely on the amount of the controlled substance, and reversed a conviction for possession of .5 grams or more of cocaine with the intent to deliver.[1] *Id.* at 191. The court interpreted Tennessee Code Annotated section 39-17-419 as providing that an inference may be drawn by the jury from the amount of a controlled substance possessed, "along with other relevant facts surrounding the arrest." *Id.*

Such "other relevant facts" that can give rise to an inference of intent to sell or deliver include the absence of drug paraphernalia, the presence of a large amount of cash, the packaging of the drugs, and the street value of the drugs. *See State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (finding that the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell); *State v. Matthews*, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony concerning amount and street value of drugs was admissible to prove the defendant's intent); *State v. Charles Benson*, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *8 (Tenn. Crim. App. Oct. 8, 2004) (finding that the absence of drug paraphernalia and testimony of value and amount of 3.3 grams of cocaine sufficient for the jury to infer the defendant's intent to sell and deliver it), *perm. app. denied* (Tenn. May 23, 2005).

We find the *Belew* case distinguishable from the present case in that the State presented other relevant facts giving rise to the inference of intent to sell. The evidence showed that the shape and weight of the crack cocaine was not consistent with possession for personal use. The street value of the 3.3 grams of crack cocaine was approximately $330 or $150 if purchased "wholesale." There were no items used to ingest crack cocaine found with the substance, and the Defendant was unemployed at the time of these

---

[1] The court, however, did conclude that the evidence was sufficient beyond a reasonable doubt to convict the defendant of simple possession. *Belew*, 348 S.W.3d at 192.

events. In our view, these "other relevant facts" give rise to the inference that the Defendant possessed the 3.3 grams of crack cocaine with the intent to sell it.

Accordingly, the evidence is sufficient to sustain the Defendant's conviction for possession with intent to sell or deliver 0.5 grams or more of cocaine. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE